May it please the Court, my name is Ben Cooper. I represent the appellant, Barry Northcross Patterson. We are here today in an appeal that really changed the year somewhat in the middle. Originally, Mr. Patterson had contended that he did not need to exhaust his remedies under the PLRA because there were no remedies available to him, simply because he had missed the initial date for his original filing of an informal grievance within the Arizona criminal system. And in our opening brief, we had, of course, relied on no versus Woodward, this Court's opinion, and no one. After the filing of the main briefs, the U.S. Supreme Court reversed no one, and this Court on remand held that exhaustion was, in fact, required, even if the unavailability of the remedies was a result of the plaintiff's own failure to plot, to comply with the rules that are available. Mr. Patterson's argument then comes down to a very fundamental principle, which the U.S. Supreme Court recognized in the Gluse case in 1959, which is the ancient maxim that no person may take advantage of his own wrong. From the very beginning, including in his complaint in this action, the allegations of which must be taken as true, because this was, after all, a ruling on a 12b6 motion to dismiss, not a motion for summary judgment, he did not comply or did not exhaust his remedies, in part because the prison officials, the corrections officers, had not made it possible for him to do so, had refused to give him forms, had denied him pen and paper. The district court had recognized the allegation in the complaint when it said in its order dismissing the action, plaintiff also alleges that defendants had interfered with his attempts to grieve the conditions of his confinement. The district court, however, made no facts one — made no findings of fact one way or the other on this issue because, following the reasoning it employed under no one, there was no reason to. That is, the State had come along and submitted an affidavit of a central office administrator who said that, according to their records, Mr. Patterson had never grieved to the highest level to the director of corrections in Phoenix. And since he had not gone all the way through, that was enough to show he had not exhausted. So the State — Kennedy. But the district judge — the district judge made no findings. It was strictly on the pleadings, correct? It was — well, it was strictly on the pleadings, but it was strictly on one aspect of the pleadings. Yes. And the district court said plaintiff did not pursue his grievance. He didn't allege that he pursued his grievance. Well, the court found that he did not pursue his grievance to the director level. It didn't say. Well, he didn't find. What he found was it wasn't alleged. Plaintiff does not allege that he pursued his claim to the highest level. He doesn't say — he says he didn't allege it. He didn't allege pursuing it. That's correct. So that's not a finding, a fact. We're not dealing with that. We're dealing whether — just strictly whether the complaint itself does it. Strictly whether. Let's assume you're right. The district judge very wisely dismissed without prejudice, because if you are able to allege an amended complaint to get a claim, you're allowed to do that. That's correct. And for some reason, we have a stray case that says that in this instance and no other, I hope, there's jurisdiction to come up on appeal. So we're up here on what usually would be something that's down there. I agree. Let's just say — that is very strange. I understand. Let's assume that that's the status. Let's assume you're right. Let's assume the district judge is right. Would we then remand for an amendment of the pleadings, because what we have before us in the district court is a dismissal without prejudice? I would say no, Your Honor. I would argue for a remand, but not for a remand for the purpose of the amendment that I believe you're suggesting. And that is, Mr. Patterson could not allege, as the Court said, that he pursued the claim as an inmate grievance to the level of the director. There was no way he could allege that he did, because that path was not available to him. That depends on what the district meant by the word pursue. He may have in an artly pursuit. He may not be successful in pursuing, but doesn't he have a right to allege the facts that shows he did pursue? Well, the fact is that what Mr. Patterson alleged was that he could not file an inmate grievance, the informal first step, because it was already past the 10-day period. And Arizona's law code, it's the Department Manual, unlike the one in California that issue a no, does not give the correctional authorities any discretion to allow a late informal grievance. But then the difficulty is that he seems to mix and match some of these grievances. So I was having trouble sorting them out as they relate to the doctors and as they relate to the other facilities. Given that no is the prevailing law at this point, doesn't he have to at least file his grievance or would have had to file it? And it could be denied because they feel there's no discretion, but at least he has to file his grievance. I don't take that as being the lesson of no, because in no, you're dealing with a California procedure where the appeals coordinator had discretion. The word in the manual regulation was may, had the discretion to allow or disallow a late grievance. Let's spin out the consequences of your rule. Basically, as long as you're late, then you don't have to exhaust your remedy. Is that correct? No, I would not say that, Your Honor. I think under no, you cannot simply game the system and say because I did not file my initial step in time, I've therefore exhausted what's available. I think this is a little bit different situation. His claim and his complaint, and I agree it's difficult to match up the doctors and the complaints and the periods of denial. His claim is not simply that he did not file on time, but that he was prevented from filing by the conduct of the criminal officials, the correctional officials. But basically, if you unpack those allegations, what you're saying is if he didn't file in time, he still is permitted to pursue his case in district court so long as he alleges frustration in terms of a timely file. I don't think that a mere allegation would be enough. I think that's a — on a motion to dismiss for lack of exhaustion, the district court can take in other evidence and can make findings of fact beyond simply the allegation. So the court could have tried to unpack all those allegations and matched up as a matter of fact those questions and made a finding as to whether or not there was evidence that, in fact, the State had prevented him from grieving, from meeting the deadlines at the initial level. So I don't think we're creating — So what then is — what is the allegation in the complaint that matches the frustration allegation? The — What is the specific conduct of the correctional administrators that we're looking at? In the initial complaint, and this is under C, count 1, section 5, under Administrative Remedies, he alleges that correctional — and we're reading, of course, his handwriting — correctional — this is on, I believe, in ER1, the bottom of the third page — actually, the bottom of the fourth page — under 5D, where it asks, if you did not submit or appeal a request for administrative relief to the highest level, briefly explain why you did not. And he writes, Correctional Officer 3 Curran, G.C., which I understand means grievance coordinator, at — I believe it's Smith Unit, denied access at two higher levels, labeled plaintiff a grievance system abuser, issued illegal tickets disposed of current grievance, and systematically aborted the grievance procedures. Certainly, I think, on a 12B6 standard, that's enough to get to the next stage, which may be a motion for summary judgment on the issue of whether or not he was actually prevented from filing a grievance at the material time. Because this is a grievance that covers a period of time, it's unclear, as Your Honor noted, how things match up. And that's why it's really for — Well, it — but it does — it covers a period of time for specific individuals in a specific facility, correct? It does. I have to admit that I had a bit of frustration. I — in parsing out exactly when Mr. Greeley was — Dr. Greeley was involved, when Dr. Goldsmith was involved, from the narrative that Mr. Patterson presented. But I think that from a pleading level, one could say that it's not beyond reason that he could show that he had been denied at a material time, and that this is really an issue of fact that the district court should handle in the first instance, rather than this court trial. What would be the question? What would be the fact question, as you see it? The fact question was whether Mr. Patterson had been denied an effective opportunity to file a grievance with him. And on this record, what facts are in dispute? Aren't the facts pretty well established on this record? I don't believe so. I think, as Judge McKeown noted, it's rather hard from this record to go through and when you've got this long narrative to try to figure out exactly what the allegations are and what points he was denied an opportunity. But if — And I think that's — that's something that the district — since the district court never ruled on that allegation in the first instance, I think this court should fall back on its usual approach, which is to say, let's remand, have the district court rule on this issue. What would we — what would we say? What would be our bottom line if we remanded? For the district court to make a determination as to whether or not Mr. Patterson had been precluded from grieving within the bounds of the rule by the — Would he be permitted to introduce new facts? It may be a matter of introducing new facts. It may be a matter of — On this record, would he be permitted to introduce new facts? Or is the record pretty well set? I don't think the record is set. The record was set on a motion directed to a specific point. That is, the State's point was simply because he did not grieve to the top level, that was enough, whereas there had been no specific investigation or battle between the parties on the issue of, did you — were you precluded from grieving at the initial level as a — What would our bottom line be if we ruled in your favor on the decision of this court? What would the bottom line be? I think the bottom line would be a remand, much as there was a remand in the Morella case for finding as to whether Mr. Morella had been denied an opportunity to grieve, that here would be a similar inquiry. Was Mr. Patterson denied an opportunity to grieve at the — at the initial level by the conduct of the Department of Corrections officials? And that's a very limited question. And if the court says, no, he was not denied an opportunity, then he has not exhausted. If the court, however, determines that he was denied an opportunity, then I believe the — the principle of the Glusk case, that the State should not be able to take advantage of misconduct by its own people, you know, the manual — should — should come into effect. The — the manual says that corrections officers are supposed to help inmates grieve, not interfere with their grieving. And, in fact, if this is a case where he did not get the materials he needed in order to do it, then he should not be foreclosed from the courts by virtue of the conduct and, I would say, misconduct of the correctional officials. But if you go back — going back to my concern that is articulated somewhat in no as well, as long as — if the inmate is untimely but alleges frustration or interference with filing of a grievance, then those cases would automatically be in federal court with at least sufficient allegation to survive a motion to dismiss. Would that be — trying to look at the practical consequence of the rule, if you combine what you said to Judge Ferris with your argument, where would that leave us in  I — I don't — one could imagine that, you know, there are inmates who would simply allege frustration with no evidence to back it up. We don't know whether that's the case, but that may simply be the price of recognizing that there can be misconduct by correctional officials. Would he need to at least allege that he tried to file a grievance and was unable? I think he would have to — he would have to allege that he sought — and certainly Mr. Patterson should be allowed the opportunity to plead to this level — that he requested, you know, the forms and a writing implement in order to grieve and his requests were turned down. But you see, that's one of the problems with the case where we have it. He had — he makes quite detailed allegations in his handwriting, which is actually reasonably easy to read, but he never says what you just said. Well, I think the problem — well, he does say at some point that he was denied writing implements, and he says that at some point he was denied the kites, and I think the State is equally unclear as to what he means by kites. I think we're assuming he means forms. No, no, kites is a pretty common term. I know what he meant by kites. I — I bow to your greater knowledge. I've been assuming that he meant by that the forms, and I may be wrong about that. The problem I've got, and that's what I want you to tell me, and that's why I kept pressing you for the bottom line, he's — he's suggesting that he was prevented, and we need to find on this record the basis for that allegation. And when you tell us, you're telling us things that aren't alleged in his statement. Right. I've told you what, in the complaint and not the motion papers, the complaint alleges what I just said, that he was denied — he was denied access or that he interfered with his grievance. And the district court never ruled on those allegations, and the district court never — could have taken evidence, could have given him more of an opportunity to present evidence on it. But the motion practice was not devoted to that issue. That was not the ground on which the State had moved. Well, the district judge makes it clear that he's making his determination based upon the complaint, the allegations of the complaint. And I'm not sure what it means about taking facts. There seems to be some stray language that you can go outside that and take facts, and I don't know where you get them. Well, what I'm saying is, not on the 12B6 motion, but he could have gone outside and converted this into a Rule 56 motion. Oh, converting. Yeah. He could have converted. That is, the court was not limited to doing it on 12B6. There are allegations that could have survived a rule. Let me ask you this. Based upon what I do see here, it appears that he never got his 802 IP to make the next complaint to the director. That's correct. He never made his initial grievance. So he didn't get the form? Well, he says at some point he was denied access to the form. Let's assume, let's assume that he didn't get the form. That's all. Not that anybody's done anything wrong, that he asked for the form and didn't get the form. Isn't that exhaustion still open? The 10 days haven't run. I don't think it's. The rule doesn't say 10 days from the denial of the form. It says 10 days from the conduct that caused him to grieve. Let me read to you rule 1.3.1. If the inmate wishes to appeal the facility health administrator's response, he slant she may do so by appealing to the director within 10 calendar days of receipt of the form 802 IP. That, as I understand it, is a different form. That is from the appeal. That is a later stage of the appeal. He does not even get to that form stage because he's under the informal resolution of 802.08. And that is he must attempt to resolve all issues informally. What page is that on? It is on page 5 of what's attached to, I believe, ER 20, 802.08. He was only in the informal stage? Yes, he did not. He cannot go to a formal grievance unless within 10 work days of the action that caused the complaint, he files an informal grievance, an inmate issue response. And that's the point which he didn't make. So he's not even in that. He's not into that slot yet. He's not into the slot. He can never. The other rule relates to going to the highest level. That's exactly correct. He doesn't even, he doesn't even have his foot in the door, much less get to the third floor. He is barred from proceeding because he did not take the first step. And the question is, was he, he's purely at the correctional officer grievance level. And the question is, was he denied the ability to grieve by being denied the forms and the writing instrument to be able to do it within a timely manner? And unfortunately, if we accept the principle that correctional officers should not be able to pre-dermit grievances by making them untimely at the first stage, the price of not sanctioning misconduct by the correctional officials may be that some of these complaints can get past a motion to dismiss and have to be resolved under Rule 56. But I think that is a fair compromise in order to maintain the integrity of the system. If we're going to require, as the Supreme Court said we will, exhaustion of remedies, we have to ask. We have your point in mind. Unless there's further questions, you'll have some time for a rebuttal. Thank you, Your Honor. Your Honors, may it please the Court. I'm Paul Carter from the Arizona Attorney General's Office representing two DOC medical administrators, Mr. Greeley and Mr. Goldsmith. It seems like my arguments are getting narrower and narrower as time goes on. We're here to deal with what started as, I think, three issues about the availability of administrative remedies that no case or the Woodford case, the Supreme Court determined procedural defaults would no longer carry the day. On briefing, counsel raised a due process argument that hadn't been raised either in in the arguments today, and I think probably rightfully so, largely because of the issue that he never did attempt to even initiate a process. And I think that's the real heart of the matter when we get to the final issue on the availability issue, which is the issue of prevention. As an initial point, I'd like to suggest that that is a conclusory argument that you don't have to address at all because of the fact that he never alleges that he went and specifically said, may I have a form, and had it declined. If you read his complaint closely, you'll see he alleges that at various times he was placed into detention units where he was separated from his property. All he really says is that he was separated from his property. He does not say, I asked for forms and was denied those forms. There is the issue of him being identified as a grievance abuser, and then there's another one of his counselors who apparently denied him the kites that Your Honor referred to. And I think, I mean, perhaps it meant the informal stage in the process, perhaps it meant the grievance itself. I think kite is commonly used as a complaint by an inmate. As counsel again conceded, there's no issue here that Mr. Patterson even presented the initial, the informal resolution. So we're really looking at that very first step in the process. MS. GOTTLIEB The question is, raised by counsel, is there is a little bit of an ambiguous order by the district court? Because, of course, the district court was focusing on what the Supreme Court ultimately resolved and wasn't so much focusing on the frustration argument. So he's saying, well, I alleged frustration in paragraph 5 and said I was frustrated, unable, couldn't get my kite, this, that. I was held up without paper and pencil, et cetera. The district court seems to dismiss his case because he didn't allege that I actually did grieve to the highest levels. But we're not even talking high at this point. We're talking initial, correct? MR. PATTERSON That's right, Your Honor. MS. GOTTLIEB So my only question there is, in the ordinary course of things, is that, do we need a ruling by the district court on that point rather than trying to divine it on appeal? MR. GOTTLIEB As preparing for arguments, I discovered something that I do a lot of and I'm sure pro se law clerks do a lot of, which is you read, reread, and reread the complaint to try to figure out how it all fits together. And I suggest that if you read the complaint closely, you'll see that the whole argument is essentially a red herring. We only have three instances that are alleged in the complaint when he had any interact when Mr. Patterson had any interactions with the defendants. Those were on June the 24th, 2002, when he was denied water, and he speculates that that might have been at the order of defendants. He then suggests that on July 2nd, he was put into some detention situation and wasn't allowed out until the 6th. But there again, he is laboring under the misconception that we're talking about calendar days, whereas, in fact, it's work days. So the fact that he was without property for the period up to July the 6th would not affect his ability after he's got his property back to initiate a grievance. The next time he has interactions with Mr. Greely is on July the 19th. He makes no allegations about being denied property or being blocked in any sense after that meeting. He merely suggests that by the time he has another meeting with Greely on August the 7th, and Greely is more specific about the fact that he's not going to get any medical assistance because of whether he's having a hunger strike or a liquid diet, he's just not going to get any medical help. In his complaint, he speculates, this might have been the time that I realized that what he did back on July 19th was what was the problem. But by then, it was already 10 days too late, so I couldn't start. Again, we're dealing with speculation here. I think your point is well taken, and it's what Woodford anticipates, is you really need to file something so at least there is that administrative record, something to suggest the prison was the one who determined when this action, when it accrued. Because if not, you're basically just saying, I am the inmate. I can decide when my action accrued. Just trust me on this one. And then we're back into that position where your honors were quite concerned, is if you've got inmates being told that all you have to do is allege that I was frustrated, I can guarantee you, having done this work for a number of years, that you will be seeing tons and tons of complaints making that simple allegation without any background facts. And the point here is that those facts, within the four corners of the complaint, it's quite clear that the 10-day periods when he might have been separated from his property, he is back with his property before the 10 calendar day periods are over. What would suffice, for example, if you look at the July 19 meeting or interaction with the DO-802, tell them again what the problem is, and then to hear maybe that Dr. Greeley is not doing anything, would that be sufficient to start the process? The DO-802 was pretty specific that it has to begin with a formal writing, a formal, informal resolution. Again, to begin the process of creating the administrative record, to make it a process where people higher up in the chain of command can look at an issue and see if there's some issues that they can get into and resolve. I think that's a really important point that I think Woodford makes clear, that they do want to see at least an effort, because if not, you're getting back to the whole procedural default issue where you've got the inmate on his own unilaterally deciding, this is when it started, I've missed my time, oops, I had no opportunity, here I am. And that really can't be the way that the law is meant to proceed. Your Honor, maybe the other point- One thing that doesn't, you know, I guess there's another question though, is because the district court didn't kind of suss that out and make a determination that no further pleadings needed to be filed are supporting evidence, should we be doing that since the district court's holding on the exhaustion issue really pointed to the absence of evidence at the highest level, which was I think the whole Department of Corrections officer who made an affidavit to that effect. Again, from my reading of the complaint, perhaps somewhat assisted by his response to our motion to dismiss, it seems relatively clear that his claims of frustration were not real. They weren't true. When he said, you know, I didn't have my property for 10 days, that's a non-issue, because the issue is 10 calendar days, and he concedes that he had, he got his property back, he was able to file papers in a state court action that he was pursuing at the time. He was not frustrated in any sense. Then there's the issue of the two officers he encountered later on, and that again I think is sufficiently clear within the four corners of the complaint for Your Honors to discard his arguments of being blocked. When Officer Curran called him a grievance abuser, this was after September of 2002 when he'd been transferred to another unit, to the South Unit. The only instances where he was interacting with the defendants was between June and August, so anything that may have accrued or occurred on Officer Curran's watch simply has nothing to do with the issues before us. There's then the issue of another officer, Schmeer, who denied him these kites. Well, that was at SMU, which was another placement that he had even after he was at the South Unit on Officer Curran's watch. So both of these instances when he was denied kites or called a grievance abuser simply are not germane to the issue of whether he was prevented the opportunity of grieving his complaints about Defendants Greeley and Goldsmith. Let me ask you a question, if I could, please. I'm still having difficulty at the initial stage of pleading, so I'm way behind the curve. Here the district judge did not make any factual findings. He made a determination based upon the wording of the complaint and entered a dismissal without prejudice. In your view, does the plaintiff now have a right to go back and amend his complaint? I believe it's in his response to the motion where he essentially concedes that he didn't file anything. I think that's what tolls the death knell to his coming into court. The teachings of Woodford are clear that you need to file something. You need to establish some sort of record for first prison administrators and then your honors to look at to be able to make a determination. I'm not sure whether that's a yes or a no. Does he have a right to go back and amend his complaint? I suppose it might depend on the amendment. If he's going to amend and say, if he contradicts his prior filings, I don't think that would work. And if he says he filed something after saying he didn't file anything, I don't think, I mean, I suppose he could do these things. What the purpose of it would, that would be. Well, the district judge said that he didn't allege that he pursued the complaint. Could he go back and amend his complaint and say I pursued the complaint? Again, in his response to our motion, he acknowledges, he concedes that he did not. Because his point is that it was, he missed out on those 10. Excuse me, your motion to dismiss. Correct. Okay, go ahead. He concedes that he did not file within the 10 calendar days. Again, missing the point because we're talking about 10 work days. And if you read further, because he's prosecuting the state court action at the same time, it's obvious that he's got his property, he's got his pencil, his writing materials. Is your argument that, of course, it's a pleading matter, it's a dismissal without prejudice, you can amend, and less than an amendment would be impossible? And I take it what your argument is, there's no way based on this record that he could allege that he pursued the complaint. I think that's correct, Your Honor. I think he'd basically be unwriting what he's already led to the court. And that argument would be based upon what in the record? Again, I don't think I can cite you to the complaint itself, but he does concede it in his response to the motion to dismiss that he made no filings within the 10-day time frame. Although counsel said that under the Arizona system, if you're late, you can't actually make filings. And if you're frustrated in making your filings, then there's sort of a, well, futility is not obviously available, but there's frustration of ability to make findings, filings. Is it true in the Arizona system that if you file beyond the 10 days on an informal discretion by the state officers? That is the letter of the rule, yes. But I think that the point becomes, when does the action really accrue? And you can see Mr. Patterson himself struggling with at what point in his dietary issues it did accrue. And I think that's all the more reason why he needs to file something to give the officer reviewing his complaint an opportunity to decide, from what I see, it was the July 19th event that started it. And therefore, he's late. Or it could be it's the August 7th event, and therefore, I think we can go forward with this. I mean, it's very subtle, but I think we're getting into speculation, things that really didn't happen, because he just didn't try. So we have no way of knowing how it would have been responded to. I mean, simply saying it could have been this date or this date doesn't really cut it, because there's been no determination. He hasn't given an opportunity for the process to run its course. Well, presumably, if he filed a late complaint or one that the State deemed late, he might then argue that that's an unfair determination if, in fact, he was frustrated in his ability to even file it on that date, correct? I mean, you'd have sort of a kick point. If it had been wrongfully or if it had been rejected, and then he comes to court and says, look at this, I think this is frustration because I was within the 10 days, I think we'd be getting, you know, I mean, I haven't thought it through, but I think in that situation, we'd be getting to a point where I'd have to concede that there might be some frustration. But again, that's really not the case presented by Mr. Patterson. Mr. Carter, Mr. Cooper is going to rebut. What, in your view, would be the bottom line of this Court's decision? You have to tell me. Well, I know one word you'd want to see is affirmed, but other than what, on what basis? I think it's really the fact that he's trying to create a unilateral accrual date without giving the Department any opportunity to look at it and decide whether something wrong had happened. He's simply, no matter how you cut it, he's disregarded the entire system, and he's asking you to speculate and decide when it might have accrued, how it might have been responded to. And that's really not the point of PLRA exhaustion, which makes it very clear that they're the twin factors they're looking for. It's to make your jobs easier, as well as to give the Department a chance to look at complaints and to resolve them. By the way, Mr. Patterson approached this case, he completely denied the Department any opportunity to review his problem. Well, if he went back now and said, well, I was untimely before, now I'm just a little more untimely because it took me all this time to wind my way through the District Court and the Ninth Circuit, and he tried to file the complaint for informal grieving, would that, would it be accepted? Meaning, I'm not saying you would rule favorably upon it, but is there anything in the Department rules that would prevent the prison from at least docketing and accepting the complaint as filed? We're getting into terminology issues here. I'm going to assume we're talking about the informal resolution stage. And that's the one aspect of the policy that says if you don't file a timely informal resolution, the entire process is off limits. That's not, that's only for the informal resolution stage. It doesn't say that with regard to the later grievances. So limiting my response to the informal resolution, and again, this is a hypothetical, I would say that seven years later would, I mean, it's much like a no, they say we don't have to approach this, address this issue because it's six months later. If it was a matter of days or something, you know, perhaps we'd have a close call. But in this instance, we don't have one at all. And I mean, candidly, if I'm an officer who's asked to look at an issue that arose seven years ago, I can't imagine a situation where they could let that one go forward. He makes some allegations about responses he got from the prison officials, and one of them had to do with what looks like a complaint that he's a troublemaker, that he just files a lot of these things. What do we do with that allegation? It is, if there's no evidence, there's no affidavits, there's no declaration, there's no record of facts. That's referenced in the complaint. I think you're referring to Officer Curran, who labeled him a grievance abuser. And that appears on page seven. A grievance abuser, that presupposes that there's already been an informal resolution filed, and that's the grievance process that's being abused. So presumably, if this had happened and it had been, well, first of all, if it had been relevant to the allegations against these defendants, that would be one thing. On top of that, if he had had his grievances rejected because of being labeled an abuser, he still should have records of his attempts to grieve and those rejections, which again, would create the kind of administrative record which would allow the court to have a handle on some of his basic non-allegations. I mean, his allegations are essentially, he's done nothing, but trust him on this. It would have happened this way, or they would have determined that I was late, kind of thing. Kennedy. Is there something in the Arizona regulations that a grievance, that that's a proper reason for denial going, denied going forward with any type of grievance procedure that a person is a? Roberts. The Department Order 802, which is attached to our motion, does include the process relating to being designated as a grievance abuser. And although I can't give you chapter and verse, I mean, I could and scuffle around for a moment, but I think it will tell you that it results in a in documentation being prepared. So once again, you would have a record of that. But again, that relates to matters that took place at the South Unit December 16th, 2002 and following, whereas the incidents at issue started in June, July of 2002. And again, as we learned in no to which reaffirmed the Knox holding that there's no such thing as a continuing violation. So matters relating to the way his his hunger, his dietary issues were handled. Once that wrong begins, that's really where the clock would start. So again, matters grievances that may have been rejected months hence would have would not be able to to exhaust the claims he's presented here. Thank you. Thank you, Your Honors. You have two minutes for rebuttal. Thank you, Your Honor. A few brief points. First, on the question on remand, what is the procedural posture of taking facts? I did not allow for one possibility of way of doing it on a motion to dismiss without converting it. And that is the district court had stated, although it referred in its holding, Judge Wallace is correct, to the failure to allege. The court had also noted that under this Court's ruling in Wyatt v. Terhune in 2003, in deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. In this case, the court didn't do that. It simply relied on the top-level allegation as opposed to resolving issues. So the court could, on remand, without converting it to a Rule 56 motion, decide those issues of fact. What date do you pinpoint as being the date on which the grievance arose? It's hard to tell, Your Honor. There are a variety of grievances. And one problem is that the lady doctor, who's identified at one point, is not identified. And we're not sure if that is, in fact, supposed to be Dr. Goldsmith, Sherry Goldsmith later, or that's some other person. Because if you look at the chronology of the case, it's not, I believe, Dr. Greeley is a he. I think we know that from the chronology. For example, if you look at his reply, his long narrative, he says on June 18th, he was sent to SMU-2 as a punishment, so that fixes one date. And then he says on the next page, plaintiff has also refused all mail, all writing supplies, all property, and all kites or forms while he was there. The next date given was July 2nd in the sequence. So if that's before July 2nd, if you say 14 days of July 18th, you're basically within 10 working days. The problem is the narrative is incomplete. And one reason it's incomplete, because that's not what the State moved on. The State moved on the narrow issue of whether it had been grieved to the highest level. And when he, Mr. Patterson, made these comments in his response to the motion. Well, even if you got out of detention on the 6th, and you had 10 more days, you still wouldn't meet the 10 days, right? I mean, in other words, if you keep adding 10 days to these possible dates, is there anyone that matches up with the evidence of alleged withholding of materials to make the complaint? Well, here's the quandary the inmate has put in under Mr. Carter's reasoning. He says, well, we should have done something, even if it might have been deemed late. Well, this Court has never required prisoners to do something when there was no chance of success. No, there was a chance because there was discretion. In the Arizona system, to use no's terminology, Arizona has laid its own minefield in respect by creating rather unforgiving rules. That is, if he does not file within the 10 days of the conduct that took place, he may not file. And the State in its was rather candid in its response brief on appeal, where it said on page 18, given the mandatory deadlines and ADC's regulations, it must be anticipated that prison authorities will refuse to consider inmate grievances that are procedurally barred. His was procedurally barred. There was no flexibility for any circumstances for frustration. This is a system where if he's not within 10 days of the initial conduct, there's no outlet, there's no built-in ability for him to come in and say, I'm late, but I have a reason. And that's the fault of the Arizona authorities. As this Court acknowledged in Morella, the California rules say that the party had to have, the inmate had to have an opportunity to file. Arizona has made no such accounting, and if that means that it's easier for prisoners to get past exhaustion because Arizona has built in no possibility of them getting their hearing administratively, then that's Arizona's price. And, you know, in this case, Arizona should follow the California model and allow for this. But Mr. Patterson finds himself with the Arizona regulations, not the California ones. And in no, there was no suggestion that if the appeals administrator had denied the appeal in its discretion, that he should have continued to follow, file appeals further up the chain, even though there was no chance of success. It's not futility in that no one's going to listen to me. It's there's nothing available to me. Here, under the unforgiving Arizona rules, there was simply nothing available to him. And finally, I would say that this Court should remand because this is a factual issue, and it's very difficult for us, all sitting here, addressing pleadings that are really addressed to a different issue, with a prisoner's pro se narrative where he doesn't even know what the context is, or what he's trying to. The factual issue, before you sit down, I know you're running to the end of your speech, what is the factual issue? The factual issue was, was within the 10 days following the conduct he's complaining of, was he denied the materials he needed to file the informal grievance that would have started the process? Thank you. What language specifically in his complaint raises that, the possibility of that? The language is that allegation in, I believe it's Section 5, where, of the complaint, where he says that the, the corrections officer 3 systematically aborted the grievance procedures. And we know that later, given that he complains about it, he may have to flesh that out with more allegations to survive. Because that's the conclusion, isn't it? That's not the issue. It is, but, you know, this is a complaint, it's no displeading, and he certainly puts more allegations about the frustration in his reply. But I think that should be enough, and the Court can, as I noted on the 12b1 motion, take backs and side fact disputed issues. And this is obviously a disputed issue, and it may be that, with the Court focused on this particular question, that it may not get any further, because he may not be able to allege specific facts about frustration within the material period. But that should be an issue for the district court to decide in the first instance, not for this Court to try to make up on appeal. Let me ask you just one final question. Was the district court right when he said, when he said that he had not pursued? Was that a correct determination? He had not alleged he had pursued the grievance? Well, the Court what the Court said was he did not pursue it to the highest level of the director. That's correct, because he could not get in the door at the lowest level. So the Court's absolutely correct. He did not. But they did not allege it. He did not allege that he pursued it to the highest level. The Court did not say that he did not request the forms and was denied it. He said he did not allege that he pursued it to the highest level. And that's correct, because he couldn't. The question is not the highest level. It's the bottom level. And he did not allege that he didn't pursue it there. He alleges that he was frustrated. Now, it may be that he needs to make more specific allegations or put it in an affidavit, making clear what his factual contentions are as to that point. But I think there's enough here that he should survive it to have that factual inquiry conducted by the district court. Thank you. The case just argued is submitted, Patterson v. Greeley. I do want to thank Mr. Cooper. This came to the Court on our pro bono program. And we really appreciate the volunteer assistance. I know also the state usually does as well. It's a little easier to respond to counseled briefs. And we'd also like to say to Mr. Carter that we're happy to have you here and that you've recovered so that you can travel. And with that, we're adjourned for the afternoon. Thank you.
judges: Wallace, Farris, McKeown, Cjj